553 So.2d 980 (1989)
STATE of Louisiana
v.
Nathan THOMAS.
No. 88-KA-1872.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
*981 Harry Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Dwight Doskey, New Orleans, for defendant-appellant.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Defendant, Nathan Thomas, was charged with and found guilty of possession of heroin with the intent to distribute, a violation of La.R.S. 40:966. He was subsequently sentenced to life imprisonment at hard labor (the mandatory sentence) without benefit of probation, parole, or suspension of sentence. Defendant now appeals, raising two assignments of error.
On January 20, 1987, based upon information received from a confidential informant ("CI"), Officers Marina and Simpson initiated a surveillance of 2424 Bartholomew Street, Apt. B, an apartment from which heroin was allegedly being sold. The officers assisted the CI in making a "controlled buy" of heroin from a resident of the apartment. They gave the CI $25.00, the street price for one dosage unit of heroin, searched him for drugs, and watched him go into the entrance of 2424 Bartholomew Street. Apartment B was located to the left of the entrance, out of the officers' view; however, Officer Marina testified that he observed the CI turn left after entering the building.
Shortly thereafter, the CI came out of the building and walked back to where the officers were situated. He gave Officer Marina a tin foil packet ("a bag") containing a substance which later tested positive for the presence of heroin. The CI was also searched again to see if he had any contraband on his person, or the money which the officers had given him. Nothing was found on the defendant.
On January 22, 1987, based upon the information received from the CI, and the controlled buy, the officers executed an affidavit for a warrant to search the apartment in question. On January 30, 1987, at approximately 6:45 p.m., the search warrant was executed by six officers, including Marina and Simpson. Four women and three children were found in the apartment, but the defendant was not at home. While four officers searched the apartment, two left, located the defendant in a neighborhood bar, and returned him to the scene.
During the search, Officer Marina discovered a matchbox in the pocket of a shirt hanging inside of defendant's bedroom closet. The matchbox contained a "bundle", or twenty-five tin foil packets, of heroin.
After the heroin was discovered the defendant was advised of his rights. When confronted with the heroin the defendant stated, according to Officer Simpson, "all the stuff in that matchbox is mine. They (indicating the women in the apartment) don't know nothing about it." Officer Marina *982 testified similarly. Thereafter, the defendant was arrested.
Based upon this evidence the defendant was found guilty of possession of heroin with intent to distribute.
Before addressing defendant's two assignments of error we note that an inspection of the record reveals an error patent. See La.C.Cr.P. art. 920. The trial judge incorrectly sentenced defendant to serve life in prison without benefit of probation, parole, or suspension of sentence. La.R.S. 40:966 only provides for life imprisonment without the benefit of probation or suspension of sentence. Therefore, the defendant's sentence should be amended to delete that portion which requires that it be served without benefit of parole.
ASSIGNMENT OF ERROR NO. 1
By defendant's first assignment of error he argues that the trial court erred in denying his request to compel the State to disclose the identity of the confidential informant. The request was made immediately before trial.
Before it denied defendant's request, the trial court ruled that no testimony would be allowed from any of the State's witnesses regarding hearsay statements made to them by the CI. The court also refused to allow the State to introduce into evidence the affidavit filed with the application for the search warrant, because it contained hearsay statements of the informant. However, the court ruled that police officers would be allowed to testify concerning the controlled buy. That is, they would be permitted to testify as to what they did and observed. It was at this point that the defendant requested the identity of the informant. The trial court denied the request, finding that the identity of the CI was protected under the informant privilege.
At trial, the State did not elicit on direct examination of it's witnesses, any hearsay statements made by the CI. However, counsel for defendant questioned Officer Marina about the contents of the application for the search warrant. In an attempt to discredit the informant, counsel brought out that the application recited that the CI had purchased cocaine and heroin. On redirect examination the prosecutor asked the officer where the CI told him he had purchased the heroin. The officer replied, "2624 Bartholomew, Apartment B, from Mr. Nathan Thomas." There was no objection by the defense. There was also detailed testimony from the officers regarding the controlled buy.
Generally, the identity of a confidential informant who supplies information concerning a crime to law enforcement officers is privileged; such identity should only be divulged under exceptional circumstances. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, Oliver v. Louisiana, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Clouatre, 482 So.2d 106 (La.App. 4th Cir.1986). The defendant bears the burden of showing exceptional circumstances, and much discretion is vested in the trial court's determination of whether the circumstances warrant disclosure. State v. Oliver, supra,; State v. Clouatre, supra.
While evidence that a CI set up or participated in defendant's crime will justify a disclosure of his identity, his furnishing of information to police, which is used by them to obtain a search warrant, is not in itself an exceptional circumstance requiring disclosure. State v. McDonald, 390 So.2d 1276 (La.1980). When the CI is nothing more than an informer, and does not participate in the criminal transaction which forms the basis of the prosecution, no disclosure of his identity is required. Roviaro v. United States, supra; State v. Williams, 347 So.2d 184 (La.1977).
In State v. Badie, 510 So.2d 120 (La.App. 4th Cir.1987), writ denied, 513 So.2d 826 (La.1987), this court reversed a trial court ruling compelling the State to disclose the identity of a CI. The facts in Badie were remarkably similar to those in the case at bar. Police received information from a CI that the defendant was selling cocaine at a certain address. Police arranged for the CI to make a controlled buy from the defendant. *983 The CI was given money, and officers watched as he entered the premises in question. The CI came out five minutes later with a small bag of cocaine. During continued surveillance of the building, police observed two more persons come and go. In the next two weeks the same CI made two more controlled buys of cocaine from the defendant at that location.
Based upon these facts a search warrant was issued and, based upon the drugs found at defendant's residence when it was searched, the defendant was charged with possession with intent to distribute marijuana, diazepam and cocaine. However, as in the instant case, the defendant was not charged with the sales of cocaine to the CI, which had formed the basis for the issuance of the search warrant. Thus, the CI did not participate in the crime with which the defendant was charged. We found that there were no exceptional circumstances to justify compelling the disclosure of the CI's identity.
In the instant case, the CI provided information to the police leading them to set up a surveillance and arrange for the controlled buy. Based upon information gathered from the CI, and their own observations, police officers obtained a search warrant for the apartment in question. After a subsequent search revealed heroin, and evidence that the defendant resided in the apartment, he was charged with possession with intent to distribute heroin. The defendant was not charged with distributing the heroin to the CI. Just as in Badie, supra, the CI did not participate in the crime with which the defendant was charged.
Since the CI did not participate in the crime with which the defendant was charged, and the defense has not shown that any other exceptional circumstances exist which would render the informer's privilege inapplicable, we are unable to say that the trial court erred in denying defendant's request for disclosure of the CI's identity.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
By his second assignment of error, defendant contends that the trial court erred in overruling its objection and failing to grant a mistrial based upon a comment made by the prosecutor during voir dire. The following colloquy is contained in the record:
"BY MR. PARKER: He [the defendant] has the right not to take the stand. And I have a philosophical question I always ask the jurors. The bottom line, people have told me that after the State presents their case, after the police officers tell what they remember happening that day, they feel that they should hear the defendant's side of the story. Again, this is something that
"BY MR. MCCURDY: Your Honor, I object and move for a mistrial. This is a direct focusing of the jury's attention to the question of whether or not the defendant will testify in this case.
"BY THE COURT: I would deny the request for a mistrial, note an objection on behalf of the Defense.
"BY MR. MCCURDY: Please note my objection.
"BY MR. PARKER: If he does take the stand, he exposes himself to my cross-examination. I'm not saying I'm Perry Mason
"BY MR. MCCURDY: Your Honor, I think this is going way too
"BY MR. PARKER: But I
"BY THE COURT: Excuse me. Stop. Is there an objection?
"BY MR. MCCURDY: Yes.
"BY THE COURT: Objection is overruled. Objection noted for the record.
"BY MR. PARKER: But I will be able to ask him some questions. Is there anyone who will feel that the defendant has done something above and beyond what the constitution says he has to and would give his testimony more weight than you would give any other witnesses? Anyone?
"BY THE JURY PANEL: (Negative responses.)"
Mr. Parker's (the prosecutor's) second statement, the one referring to cross-examination, *984 is the one that defendant cites as dispositive on appeal.
La.C.Cr.P. art. 770(3) states in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the ... district attorney ..., during the trial or in argument, refers directly or indirectly to:
. . . . .
(3) The failure of the defendant to testify in his own defense ..."
It has been held that an indirect reference to the defendant's failure to take the stand is reversible only when the prosecutor intended to emphasize it. State v. Jackson, 454 So.2d 116 (La.1984). It has also been held that during voir dire the State may mention the defendant's constitutional privilege against self-incrimination to the jurors, and then question them regarding the weight they will give to the defendant's testimony should he decide to testify. State v. Shea, 421 So.2d 200 (La. 1982), reversed on other grounds, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).
In the instant case, under Shea, supra, the State was entitled to inform the jury of the defendant's right to remain silent, and to question them as to the weight they would give the defendant's testimony. These were the first and third statements. The second statement, referring to the State's right to cross-examine the defendant should he decide to take the witness stand, appears to be merely a transitional statement prefacing the State's questioning of the jury regarding the weight it would give defendant's testimony. As such, the statement does not seem to be an intentional reference to the defendant's refusal to testify, particularly since, at this point in the proceedings, it was not even known whether defendant would testify or not. See, for example, State v. Willie, 410 So.2d 1019 (La.1982), cert. den., 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984).
This assignment of error lacks merit.
For the foregoing reasons defendant's conviction and sentence are affirmed but his sentence is amended to delete that portion which requires that it be served without benefit of parole.
CONVICTION AFFIRMED.
SENTENCE AFFIRMED AS AMENDED.
PLOTKIN, J., concurs with reasons.
PLOTKIN, Judge, concurring with reasons.
I respectfully concur in the majority's result. However, the comments made by the prosecutor border on reversible error. The Louisiana Supreme Court has stated that when a prosecutor directly refers to a defendant's failure to take the stand, the defendant must be granted a mistrial if he requests one. State v. Fullilove, 389 So.2d 1282 (1980). In the case at bar I would characterize the statements made as indirect rather than direct comments on the defendant's possible failure to testify since the remarks were made in voir dire. When the reference to the defendant's failure to testify is indirect, there is reversible error only if the prosecutor intended to emphasize the defendant's failure to testify. State v. Jackson, 454 So.2d 116 (La.1984).
The nature and scope of the comments made by the assistant district attorney at the defendant's trial were meant to cast negative aspersions on the defendant if in fact he did not testify in his own behalf. As the majority indicates, the jurisprudence holds that the prosecution may refer to the defendant's constitutional right not to testify in voir dire. However, the comments made in this case go well beyond this jurisprudential rule.
In the first statement, the assistant district attorney's "philosophical question" on the defendant's failure to testify implies that it is somehow the duty of the defendant to take the stand for the jury to hear his side of the story. Posing the question as philosophical, the assistant district attorney sought to shift the burden to the defendant to justify his eventual failure to testify. The second statement, that the defendant would "expose himself to my cross-examination", gives the inference that the *985 defendant might not take the stand if he had something to hide. Rather than being only transitional as the majority holds, this statement arguably colors the defendant's failure to testify in a negative light. Finally, in the ADA's third statement he refers to the constitutional right of the defendant not to testify. In my opinion, only this last statement is within the jurisprudential rule.
I find this deliberate conduct by the assistant district attorney to be reproachful. Yet even though I find that these statements were intended to emphasize the defendant's failure to testify, this does not necessarily constitute reversible error. If there is overwhelming evidence of guilt, the error is harmless. Jackson, 454 So.2d at 118 (La.1984). In this case, after the defendant's apartment was searched pursuant to a warrant and the heroin was found, the defendant admitted that "all the stuff in that matchbox is mine." An officer qualified as an expert in drug packaging described the packaging seized in style and amount as suited for further distribution. After reviewing the entire record, I find that there was "overwhelming evidence of guilt". However, comments such as those made by the assistant district attorney in this case must not be condoned as the remarks tend to erode a basic constitutional right.