PLOTKIN, Judge.
Defendant Darrell Allen was charged by bill of information with armed robbery under LSA-R.S. 14:64. He pleaded not guilty and was tried by a twelve-person jury, which found him guilty of first-degree robbery. He was sentenced to twenty (20) years at hard labor without benefit of probation, parole or suspension of sentence. The State filed a multiple bill and after a multiple bill hearing, Allen was adjudicated a multiple offender and was resentenced to twenty (20) years at hard labor without benefit of probation, parole or suspension of sentence and without benefit of “good time.” Allen appeals, raising 12 assignments of error. Because we find merit in assignment of errors 1 and 2, we pretermit review of the remaining assignments of error.

Facts

On February 5, 1987, at approximately 1 p.m., a black male entered the Offshore Restaurant on Tchoupitoulas Street and ordered a sandwich from Althea Matthews, who was working behind the counter. After a few minutes, the customer bought a pack of gum, then pulled a gun. He ordered Ms. Matthews to open the two cash registers on the premises, from which he removed the money. He also took the money from Ms. Matthews’ purse. While this was going on, Ms. Matthews called to Louise Harris, who was in the kitchen preparing the sandwich. Ms. Harris looked up and saw the robber. The robber then left.
On February 20, 1987, Officer Sydney Bournes of the New Orleans Police Department conducted a photographic lineup. He first showed the lineup to Ms. Harris at her home at 7:15 p.m. Ms. Harris selected the defendant’s photo and signed her name on the back of it. The photographic lineup was then shown to Ms. Matthews at her home at 8:30 p.m. Officer Bournes used the same photographs he used with Ms. Harris. Ms. Matthews also selected and signed the defendant’s photo. Ms. Matthews testified that she had seen the defendant in the restaurant two days prior to the robbery.
Emily Walker testified on behalf of the defendant. She stated that she and the defendant were together from 9 a.m. until 3 p.m. on February 5, 1987. Ms. Walker testified that they had breakfast at her house and then went shopping at Uptown Square. She stated that after leaving Uptown Square, she and Wilkerson drove around and went to some stores on Magazine Street, before the defendant was arrested on different charges at about 3 p.m.

Errors Patent

A review of the record reveals no errors patent.

Prosecutor’s Improper Comments

Defendant charges that the prosecuting assistant district attorney (ADA) made several improper, highly-prejudicial references to defendant’s failure to testify during the trial. Defendant claims that the trial court erred in overruling his objection and in failing to grant a mistrial based upon the ADA’s comments, particularly those made during closing argument. The pertinent part of the transcript reads as follows:
Mr. Woods: Now, and I am going to get to a point in this trial that you may hear a lot of fireworks about, but its [sic] something I believe strongly in. And you heard one witness testify for the defense today, and you also heard from the defendant. You heard from him. He made that outburst. He got up here and he started yelling “Y’all framing me. Y’all framing me.” Did you hear anybody say why?
*640 Mr. Edwards: I’m going to have to object to this, your Honor. Fm going to have to object to this. He knows he cannot comment on the defendant’s failure to take the witness stand.
The Court: Fm going to overrule your objection. I find his comments are within the scope and the jury can draw what ever conclusions they want from what they observed.
Mr. Woods: We understand what our burden of proof is. But you see, its kind of like you know how when you are small, when you get in a fight and somebody hits you, and you run back inside behind your mama? Now, Mr. Edwards can tell you that his client is inarticulate. And you say, wait a minute Mr. Edwards, we know he’s articulate.
Remember, there are rules of evidence. And, see, when a person takes the witness stand, we can ask him certain questions we can ask him a lot of questions, [sic] We can ask him questions that you will never hear the answer to.
Supplemental Transcript, pp. 7-8.
The ADA later stated as follows:
Mr. Woods: Where is the frame up? Where is the frame up? There is no frame up. It is what you call tag and run back behind mama? Y’all remember that? And ask yourself why? Why the tag and run back behind mama?
Mr. Edwards: Again, your Honor, Fm going to have to object. He’s going into an area he knows he cannot be. He’s talking about the rules of evidence. He’s violating right now.
The Court: I will sustain it with regard to that.
Supplemental Transcript, pp. 11-12.
Still later, the ADA made the following comments:
Mr. Woods: ... You see, it’s a frame up. It’s a frame up. Again, say something and he runs behind mama. This is where I want him, because I got something for you.
Soon after these remarks occurred, the defendant moved for a mistrial. The trial court denied the motion.
The rule governing mistrials in situations like the one presented by the instant case is found at La.C.Cr.P. art. 770(3), which states, in pertinent part, as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the ... district attorney ..., during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(3) The failure of the defendant to testify in his own defense.
The prohibition against the prosecution commenting upon the defendant’s failure to testify was first recognized in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), where the United States Supreme Court held that the Fifth Amendment, through the Fourteenth Amendment, forbids comment by the prosecution on the accused’s silence, because such comment “is a remnant of ‘inquisitorial system of criminal justice.’ ” In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court recognized that only violations of the Fifth and Fourteenth Amendments which are unimportant and insignificant may be deemed harmless. The burden is on the person alleging harmless error to prove beyond a reasonable doubt that the error was, in fact, harmless.
In United States v. Hastings, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Supreme Court ruled that a judgment may only stand where there is no reasonable possibility that the State’s comment regarding the defendant’s failure to take the stand may have contributed to the defendant’s conviction. However, in the case at hand, a definite possibility exists that the ADA’s commentary on the accused’s failure to testify had an impact on the outcome of the trial.
Louisiana’s rule regarding such commentary was articulated in State v. Fullilove, 389 So.2d 1282 (La.1980) and State v. Jackson, 454 So.2d 116 (La.1984). Fullilove, supra, concerned a direct reference by the prosecutor on the accused’s failure to testi *641 fy. The court held that, where the prosecutor directly refers to the defendant’s failure to take the stand, the defendant must be granted a mistrial if he requests one. In Jackson, supra, the court stated that an indirect reference by the prosecutor regarding the defendant’s failure to take the stand is reversible only when the prosecution intended to emphasize it.
In the case at bar, the ADA’s general commentary was specifically intended to emphasize the defendant’s failure to testify and hence constituted indirect commentary. Moreover, the ADA’s remarks also constituted direct commentary when he stated, “Remember, there are rules of evidence. And, see, when a person takes the witness stand we can ask him questions we can ask him lots of questions, [sic] We can ask him questions that you will never hear the answer to.” (Emphasis added.)
We find that the ADA’s commentary crossed the line delineated in State v. Thomas, 553 So.2d 980 (La.App. 4th Cir.1989), writ denied 558 So.2d 568 (La.1990). Therein, this court held that direct references to a defendant’s failure to testify consitute reversible error. Id. at 984. In Thomas, the prosecutor’s references to the defendant’s failure to testify were found to be indirect because they were made during voir dire and were thus only speculative.
In the present case, however, Mr. Woods’ remarks were made during closing argument. They were obviously intended to indicate that the defendant’s failure to testify could be considered evidence of his guilt. This type of disregard for the right of a defendant cannot be tolerated. Mr. Woods’ statements imply that the defendant somehow had a duty to take the stand to allow the jury to hear his side of the story. The remarks contained the inference that the defendant probably refused to take the stand because he had something to hide. Such statements are unacceptable under the doctrine enunciated in Thomas, 553 So.2d at 984, which prohibits direct or indirect references to the defendant’s failure to take the stand.
For the above and foregoing reasons, defendant’s conviction is reversed, his sentence is vacated, and the case is remanded for new trial to be conducted in accordance with this opinion.
REVERSED AND REMANDED.